1    Edward D. Fagan, Applicant Pro Se
2    590 NE Wavecrest Way, Boca Raton, FL 33432
3    Tel. (561) 757-5432 Email: faganinternational@gmail.com
4
5                  UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF OHIO
7           CASE # _____
8    In Re:
9        Application of EDWARD D. FAGAN,
10       pursuant to 28 U.S.C. § 1782 for Judicial Assistance in
11     obtaining evidence from (i) HUNTINGTON NATIONAL
12     BANK and DAVID GORY and (ii) J. P. MORGAN
13     CHASE BANK and JOHNBULL EJOVI
14     for use in a Foreign Tribunal and Proceeding
15
16

### APPLICATION FOR JUDICIAL ASSISTANCE
### <u>PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING</u>

20       EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant, hereby

21 makes the following application for limited judicial assistance pursuant to 28 U.S.C. § 1782 to

22 aid in the Foreign Proceeding(s) which is currently pending in and under ongoing criminal

23 investigation in the Republic of South Africa (SAPS Sinoville Case # 3471/1/2019) related to the

24 commission of a "Nigerian Type Internet & Bank Fraud" through which Applicant, his

25 predecessors and partners were solicited to send monies to various banks, including

26 HUNTINGTON NATIONAL BANK ("HUNTINGTON") and JP MORGAN CHASE

27 ("CHASE") for the benefit of individuals including DAVID GORY ("GORY") and JOHNBULL

28 EJOVI ("EJOVI") which monies they believed were being sent to acquiring a lawful interest in

29 an estate, property and other assets and the evidence sought in this Application is in the custody,

30 possession and/or control of witnesses (i) HUNTINGTON and GORY and (ii) CHASE and

31 EJOVI each of which can be found in this this District and each of which were used in the fraud

32 against Applicant, his predecessors and partners and respectfully shows the Court the following:

## INTRODUCTION

1.      There is an ongoing criminal investigation in the Republic of South Africa (SAPS Sinoville Case # 3471/1/2019) related to the operation of domains and emails – i.e. draftissue.com (pretending to be a Chase Bank domain) and fddic.com (pretending to be the Federal Deposit Insurance Corporation) domains and associated email addresses were used with other similarly fake domains and associated email addresses in the commission of a massive coordinated Internet Fraud through which Applicant, his predecessors and partners were defrauded out of millions of dollars.

2.      The fraud included fake documents and instructions being sent from the persons / entities who were behind the fake domains and associated email addresses, including the ones that are being investigated and prosecuted in South Africa and which led/directed Applicant, his predecessors and partners to send / wire monies to banks and account holders such as (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI.

3.      This Application is to get information from (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI that will identify the persons / entities behind the above domains and email addresses, who / which are the persons who gave the instructions to send monies to (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI.

4.      Witnesses (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI have evidence that will assist the South African investigators and prosecutors as they pursue and bring to justice those persons / entities who / which are behind the fake domains, the fake email addresses and the fake documents that were used to solicit Applicant, his predecessors and partners to wire thousands of dollars that Applicant, his predecessors and partners believed were

1    to be used to repatriate the estate monies, assets and properties.

2         5.     This Application for Judicial Assistance is to obtain evidence as allowed pursuant

3    to Section 1782(a), and the US Supreme Court in *Intel v. Advanced Micro Devices, Inc.*, 542

4    U.S. 241 (2004) so that the evidence obtained from persons and entities residing and/or found

5    within this judicial district so that evidence " . . . for use in a proceeding in a foreign or

6    international tribunal, including criminal investigations conducted before formal accusation."

7         6.     This Application relates to a "Nigerian Type Internet Fraud" through which

8    emails were sent from fake domains and fake email addresses associated with the fake domains

9    (some of which pretended to be from Chase Bank, Bank of America, Fidelity Investments, the

10   Federal Deposit Insurance Corporation) and fake documents purportedly from those entities.

11        7.     These fake domains, fake email addresses and fake documents were used to

12   defraud Applicant and his partners and predecessors into sending millions of dollars in an effort

13   to secure the repatriation of the Inheritance Monies to which they believed they were acquiring a

14   lawful interest but which monies were instead sent to banks such as HUNGTINGTON and

15   CHASE and account holders such as GORY and EJOVI, who / which had nothing to do with the

16   purported assets or alleged repatriation of the Inheritance monies.

17        8.     Applicant, his predecessors and partners were tricked into sending monies to (i)

18   HUNGTINGTON at which GORY had an account and (ii) CHASE at which EJOVI had an

19   account.

20        9.     Specifically, the wire transfers that were sent included (i) January 3, 2018 transfer

21   of $15,000.00 to Account # XXXXXXX9922 at HUNTINGTON with account beneficiary as

22   GORY and (ii) February 9, 2017 transfer of $35,000.00, February 10, 2017 transfer of

1 $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account # XXXXXX1725 at CHASE

2 with account beneficiary as EJOVI.

3       10.     HUNTINGTON and GORY and CHASE and EJOVI had nothing to do with the

4 purported assets or alleged repatriation of the Inheritance monies.

5       11.     The persons / entities that are being investigated and prosecuted in South Africa

6 in SAPS Sinoville Case # 347/01/2019 used (i) HUNGTINGTON and GORY and (ii) CHASE

7 and EJOVI to receive hundreds of thousands of dollars that were fraudulently solicited from

8 Applicant, his predecessors and partners to repatriate the estate monies, assets and properties but

9 which monies were later transferred on to the real persons / entities behind the fraud.

10       12.     The real persons / entities behind the fraud had Applicant, his predecessors and

11 partners send monies to (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI so as to

12 conceal their true identity of themselves and all others who were behind the "Nigerian Type

13 Internet & Bank Fraud".

14       13.     The South African investigators and prosecutors will use the evidence from this

15 Application to assist them in identifying the connection between the South African

16 persons/entities involved which used the domains and associated email and domains with the

17 persons who directed that wire transfers be sent to (i) HUNTINGTON and GORY and (ii)

18 CHASE and EJOVI and to ultimately bring these people to justice and shut down the fraud.

19       14.     The evidence sought is in the custody, possession and/or control of (i)

20 HUNTINGTON and GORY and (ii) CHASE and EJOVI and is relevant to investigation by

21 South Africa Police Services – SAPS Sinoville Case No. 347/01/2019 and their future

22 prosecutions.

15.     The South African investigators and prosecutors have already confirmed to Applicant that they welcome the evidence that can be gathered through this Application.

16.     While the evidence sought is primarily for use the South African Foreign Proceeding in which Applicant is the original complaining witness in SAPS Sinoville Case # 347/01/2019  that is underway in the Republic of South Africa by the South African Police Services – Serious Commercial Crimes Unit – and in which the South African authorities are bringing in South African Interpol due to the international nature of the wrongdoings, the evidence will assist with other investigations that Applicant learned of after the commencement of the South African Case SAPS Sinoville Case # 347/01/2019.  The evidence will also be used (i) to assist the FBI Field Office in New Orleans which is investigating these exact crimes and internet fraud and in which Applicant has an interest and for which the FBI continues to request Applicant's assistance, information and evidence and (ii) the Royal Canadian Mounted Police (RCMP) investigation also commenced before Applicant's involvement and pending in Canada.

17.     The scam / fraud committed against Applicant, his predecessors and partners, started in or about 2016 and is ongoing. [1]

18.     The scam/fraud was a variations of what cyber-crime and the law enforcement experts refer to as the "419 Letter Scam" [2], "Romance Scam" [3] and "Advance Fee Scam" [4] which

---

[1]     Applicant has been a victim of this fraud since early 2019.  Applicant acquired and owns 100 % of the rights of others including Russ Daneluk (victim of this fraud starting in late 2016/early 2017) who was solicited through the emails and domains that sent the fake documents and the instructions as to where the wire transfers were to be sent.

[2]     https://www.fbi.gov/scams-and-safety/common-fraud-schemes/nigerian-letter-or-419-fraud - Nigerian letter frauds combine the threat of impersonation fraud with a variation of an advance fee scheme in which a letter mailed, or e-mailed, from Nigeria offers the recipient the "opportunity" to share in a percentage of millions of dollars that the author—a self-proclaimed government official—is trying to transfer illegally out of Nigeria.

include persons/entities connections to Nigeria, who have target persons in the United States and Canada and which use private persons, banks, shipping, travel and other companies through which the scammed monies are transferred.

19.    Applicant has been told by the South African investigators and prosecutors that the Nigerian Type Internet & Bank Fraud to which Applicant, his predecessors and partners fell victim is one of the most sophisticated and longest running "Nigerian type" internet bank scams.

20.    The evidence from this Application will also assist the FBI New Orleans Field Office investigations which in some areas appear to overlap and the investigators wish to cooperate with one another to ensure that the fraud is stopped and that those persons/entities involved and/or which benefitted from the fraud are brought to justice.

21.    This Application seeks specific/limited information related to the wire transfers by Applicant's partners and predecessors including (i) the January 3, 2018 transfer of $15,000.00 to Account # XXXXXXX9922 at HUNTINGTON with account beneficiary as GORY and (ii) the February 9, 2017 transfer of $35,000.00, February 10, 2017 transfer of $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account # XXXXXX1725 at CHASE with account beneficiary as EJOVI. [5]

---

[3]     https://en.wikipedia.org/wiki/Romance_scam  - A romance scam is a confidence trick involving feigning romantic intentions towards a victim, gaining their affection, and then using that goodwill to commit fraud. Fraudulent acts may involve access to the victim's money, bank accounts, credit cards, passports, e-mail accounts, or national identification numbers; or forcing the victims to commit financial fraud on their behalf. In many instances, a mail-order bride scam will also bait the victim into committing felonies to establish citizenship for the perpetrator.

[4]     https://www.fbi.gov/scams-and-safety/common-fraud-schemes/advance-fee-schemes - An advance fee scheme occurs when the victim pays money to someone in anticipation of receiving something of greater value—such as a loan, contract, investment, or gift—and then receives little or nothing in return.

[5]     There are / were other transfers to HUNTINGTON with account beneficiary as GORY and CHASE with account beneficiary as EJOVI.  These wire transfers are representative of them all.

22.      The evidence that is in the possession of (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI will or should show the persons or entities who were behind the fraud against Applicant, his predecessors and partners and how the transfers to (i) HUNTINGTON and with the account beneficiary as GORY and (ii) CHASE with the account beneficiary as EJOVI were connected to the domains and emails that are the subject of the South African foreign proceeding – SAPS Sinoville Case # 347/01/2019 investigations and future prosecution.

23.      Applicant is not seeking to circumvent any relevant evidence gathering laws.

24.      Applicant is not on a fishing expedition.

25.      Applicant is not looking for persons or entities against whom/which civil claims can be brought.

26.      Applicant is looking for information that will assist in the ongoing investigations and future prosecutions in South Africa foreign proceeding – SAPS Sinoville Case # 347/01/2019. The evidence will also assist the FBI New Orleans Field Office investigations. The South African and FBI investigations are both directed at the Nigerian Internet / Banking Fraud to which Applicant, his predecessors and partners fell victims and the investigation appear to overlap.

27.      The request for the specific information in the Application, i.e. information related to the monies that were transferred as set forth in ¶ 21 above to (i) HUNTINGTON with the account beneficiary as GORY and (ii) CHASE and with the account beneficiary as EJOVI, came in part from South African Police Services lead investigator in SAPS Sinoville Case # 347/01/2019.

28.      Capt. Chiloane confirmed that the information and documents requested from

1  entities such as (i) HUNTINGTON with account beneficiary as GORY and (ii) CHASE with the

2  account beneficiary as EJOVI - which entities must have the Know Your Customer ("KYC") and

3  due diligence documents to show from whom and for what reason the wire transfers were made

4  and documents showing to whom/where monies were later transferred onward.

5       29.    This evidence, information and documents will assist the South African Police

6  Services – SAPS Sinoville Case # 347/01/2019 - investigators and prosecutor prove the fraud

7  cases and ensure that all the persons / entities involved in and who / which benefitted from the

8  fraudulent scheme are brought to justice.

9       30.    The request is not overly broad or burdensome and is limited to information

10  related to the transfers as set forth in ¶ 21 above, i.e. (i) the transfers made to HUNTINGTON

11  with the account beneficiary as GORY and (ii) the transfers to CHASE with the account

12  beneficiary as EJOVI.

13       31.    South African Police Services Capt. Eric Chiloane confirmed in his March 1st

14  Email that the evidence that should be forthcoming from this Application is welcome and will be

15  helpful in the investigation and future prosecutions in SAPS Sinoville Case # 347/01/2019.

16  **EXHIBITS IN SUPPORT OF APPLICATION**

17       32.    **Exhibit 1** - copies of the March 1 and 27, 2019 emails from South Africa Police

18  Services – Serious Commercial Crimes Unit - Capt. Eric Chiloane - leading the South African

19  Police Services Sinoville Case # 347/01/2019.  In the March 1, 2019 Email, Capt. Chiloane

20  confirms the existence of the complaint, investigation and future prosecutions; and that the South

21  Africa Police will welcome evidence that can be secured through the US Courts and that

22  evidence will be used in the future prosecutions.  The March 27, 2019 Email confirms that the

1  South African Police are looking to bring Interpol into the case as it involved an international

2  fraud and Cover Sheet of South African Case file.

3      33.  **Exhibit 2** - copies of the emails from the FBI Special Agent Bradford leading the

4  New Orleans Field Offices investigation.  The other is being conducted by the Royal Canadian

5  Mounted Police, the details of which Applicant is currently unaware.

6      34.  **Exhibit 3** - copy of the Assignment of Russ Daneluk to Applicant.

7      35.  **Exhibit 4** - shows some of the fake emails sent from domain – draftissue.com –

8  pretending to be "Chase Bank" which is part of the South African Police Services Foreign

9  Proceeding SAPS Sinoville Case # 347/01/2019 and is the subject of this Application.

10      36.  **Exhibit 5** - shows some of the fake emails sent from domain – fddic.com –

11  pretending to be the Federal Deposit Insurance Corporation which is part of the South African

12  Police Services Foreign Proceeding SAPS Sinoville Case # 347/01/2019 and is the subject of this

13  Application.

14      37.  **Exhibit 6** - shows some of the wire transfers that were sent including (i) January

15  3, 2018 transfer of $15,000.00 to Account # XXXXXXX9922 at HUNTINGTON with account

16  beneficiary as GORY and (ii) February 9, 2017 of $35,000.00, February 10, 2017 transfer of

17  $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account # XXXXXX1725 at CHASE

18  with account beneficiary as EJOVI.

19  **FACTS RELATED TO THE APPLICATION**

20      38.  Applicant, his predecessors and partners are recognized by the South African

21  Police Services – SAPS Sinoville Case # 347/01/2019 as victims of a Nigerian fraud.

22      39.  The fraudulent scheme involved requests for monies made through emails sent to

1  and by a woman named "Kari Peters" (hereinafter "Peters") who was allegedly an heir to

2  inheritance assets that were held in Nigeria but which could be transferred to the United States.

3       40.    Applicant, his predecessors and partners were told that (i) the Inheritance Monies

4  and Assets to which Peters was allegedly entitled allegedly came from Peter's father (Grant

5  Peters) and Peters claimed the monies and assets were lawfully earned by her father as a result of

6  his alleged contracting business(es) in Africa; (ii) Peters came to know a Canadian national –

7  Paul Corkum (hereinafter "Paul") - a paraplegic living in Ottawa Canada, who Peters allegedly

8  met from her mother; and (iii) if Peters and Corkum were engaged to be married, Corkum would

9  be assigned the rights to the Inheritance Monies and Assets allegedly due to Peters.

10       41.    Peters and Corkum involvement in this matter began in 2016 and continues to the

11  present.

12       42.    Applicant, his predecessors and partners only became involved in 2017.

13       43.    Prior to Applicant's, his partners' and predecessors' involvement, Peters and

14  Corkum got Corkum's brother (Ken Corkum), his wife Kate O'Neill and their relatives to

15  transfer monies in furtherance of the fraud.

16       44.    The fraud was this:  To get the alleged Inheritance Monies and Assets transferred

17  into accounts that would be in their names, Peters and Corkum allegedly had to pay certain

18  monies for fees, services, customs, duties and other charges.

19       45.    Prior to approaching Applicant, his predecessors and partners, Peters, Corkum

20  and Corkum's relatives (Ken Corkum, Kate O'Neil and others) allegedly exhausted all their

21  resources and allegedly did not have the necessary additional monies to complete the transfer.

22       46.    In late December 2016 or early January 2017, Peters, Corkum and Ken Corkum

1 approached Applicant, his predecessors and partners to induce them to the possibility of

2 acquiring the Inheritance Monies and Assets by providing additional assistance and monies.

3      47.    Applicant, his predecessors and partners were offered rights and interests to the

4 Inheritance Monies and Assets in exchange for which Applicant, his predecessors and partners

5 would provide additional monies, resources and assistance to get the Inheritance Monies and

6 Assets transferred into account(s) where they could be legally distributed to Peters, Corkum and

7 Applicant, his predecessors and partners.

8      48.    Using fake email addresses sent from fake domain names (masquerading as Chase

9 Bank, Bank of America, Fidelity Bank, the Federal Deposit Insurance Corporation) including the

10 domains and emails that are part of the South African criminal investigation and proceeding

11 SAPS Sinoville Case # 347/01/2019, Applicant, his predecessors and partners were sent fake

12 documents in which Peters purportedly transferred her interests in the Inheritance Monies and

13 Assets to Corkum, who in turn transferred his interests to Applicant's partners / predecessors.

14      49.    On their face, the documents presented to Applicant, his predecessors and

15 partners appeared to be legitimate and there appeared to be no reason to doubt that the

16 Inheritance Monies and Assets existed and could be legally transferred.

17      50.    At all times, Applicant, his predecessors and partners believed that the Inheritance

18 Monies and Assets existed, that the rights to the monies were legitimate and that they could

19 lawfully acquire an interest in the monies and assets.

20      51.    At all times, Applicant, his predecessors and partners were committed to the fact

21 that before anyone was entitled to receive and take any of the Inheritance Monies and Assets that

22 all taxes, customs duties, transfer fees and other government and regulatory compliance

1    requirements were met and that when the money was actually transferred, it would be clean and

2    not the subject of any illegal or unlawful activity.

3         52.    Applicant, his predecessors and partners considered this to be a lawful business

4    investment to which they would contribute time, energy and monies in exchange for the return of

5    the Inheritance Monies and Assets.

6         53.    Peters and Corkum gave Applicant, his predecessors and partners documents and

7    information that they claimed were given to them by persons / entities who were allegedly

8    responsible for getting the Inheritance Monies and Assets released.

9         54.    Unbeknownst to Applicant, his predecessors and partners, the persons / entities

10   who allegedly gave the information to Peters and Corkum were behind, part of and benefitted

11   from the Nigerian fraudulent scheme and that the documents and information give to Applicant,

12   his predecessors and partners was intended to mislead Applicant, his predecessors and partners

13   into believing that the alleged Inheritance Monies and Assets actually existed when they did not.

14        55.    Further, the persons / entities sought to deceive Applicant, his predecessors and

15   partners, into believing that if they paid the fees as per the instructions transferred through Peters

16   and Corkum that the Inheritance Monies and Assets would actually be released.

17        56.    Applicant, his predecessors and partners were told that what was needed to ensure

18   the transfer of the inheritance monies was the payment of various fees, invoices, costs or other

19   monies to persons and entities who had accounts at various banks in the United States.

20        57.    Applicant, his predecessors and partners were presented with various documents

21   all of which were transmitted by email or text messages and in which the domain names, email

22   addresses and documents themselves appeared on their face to be authentic.

58.     The documents and information presented to Applicant, his predecessors and partners, were fakes and were part of a scheme designed and intended to trick Applicant, his predecessors and partners to transfer monies to accounts throughout the United States, which monies were then transferred onward to the persons / entities behind this Nigerian fraud or were used to pay invoices for services related to different parts of the Nigerian Fraud.

59.     As relates to this Application, Applicant, his predecessors and partners were directed to send the wire transfers as set forth in ¶ 21 above to (i) HUNTINGTON with GORY as the beneficiary or account holder and (ii) CHASE with EJOVI as the beneficiary or account holder.

60.     Using fake, forged and false documents, Applicant, his predecessors and partners were "tricked" into sending the wire transfers as set forth in ¶ 21 above to (i) HUNTINGTON with GORY as the beneficiary or account holder and (ii) CHASE with EJOVI as the beneficiary or account holder.

61.     Applicant, his predecessors and partners were told that the transfers as set forth in ¶ 21 above were to secure repatriation of the Inheritance Monies and Assets in which Applicant, his predecessors and partners acquired an interest.

62.     Applicant, his predecessors and partners were not told that any of the transfers they were instructed to send were to ship goods or pay for other transportation or travel or other costs to Nigeria or anywhere.

63.     This relief requested will help the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation and future prosecutions, as well as the FBI, the RCMP and other law enforcement agencies they will get involved, (i) prosecute the fraud; (ii) make their

cases against the persons / entities involved with the scheme; (iii) identify all the persons/entities involved with the fraud; (iv) shut down the fraud and (v) hold accountable all the persons and entities who are / were behind and /or benefitted from the scheme.

64.     South African Police Services Capt. Eric Chiloane told Applicant that banks such as HUNTINGTON and CHASE to which monies were wired by Applicant, his predecessors and partners would have important and relevant information about the fraud and that information could be gleaned from knowing where the monies were transferred (if they were transferred onward) out of the original accounts.

65.     The identity of some of the persons / entities involved with the scheme have been discovered.  These persons / entities who / which are currently under investigation by South African Police SAPS Sinoville Case # 347/01/2017 and others are under investigation by the FBI New Orleans Field Office.

66.     Applicant, his predecessors and partners have no available recourse and no ability on their own to secure the evidence related the transfers referred to above in ¶¶ 12 & 13, specifically (i) the three transfers to HUNTINGTON with GORY as the beneficiary or account holder and (ii) the three CHASE with EJOVI as the beneficiary or account holder that Applicant's partners and predecessors were tricked into wiring.

## WITNESSES AND EVIDENCE IN WITNESSES POSSESSION

67.     Witness HUNTINGTON NATIONAL BANK maintains multiple branches within this District including one known as "Public Square Branch", 200 Public Square, Cleveland OH

1  44114, within this District. [6]

2      68.    Witness DAVID GORY resides at 2243 Chester Avenue, Apt. 4402, Cleveland,

3  OH  44114

4      69.    Witness JP MORGAN CHASE BANK, maintains multiple branches within this

5  District, including at 8231 Columbia Rd., Olmsted Falls, OH  44138, all within this District. [7]

6      70.    Witness JOHNBULL EJOVI maintains a residence at 9397 Wheaton Court,

7  Olmsted Falls, OH, within this District.

8      71.    Account # XXXXXXX9922 is maintained at HUNTINGTON and the account

9  holder is GORY.

10      72.    Account # XXXXXX1725 is maintained at CHASE and the account holder is

11  EJOVI.

12      73.    As referred to in ¶ 21 above, Applicant's predecessors and partners sent the

13  following wire transfers, (i) January 3, 2018 transfer of $15,000.00 to Account #

14  XXXXXXX9922 at HUNTINGTON with account beneficiary as GORY and (ii) February 9,

15  2017 transfer of $35,000.00, February 10, 2017 transfer of $37,000.00 and March 2, 2017

16  transfer of $15,000.00 to Account # XXXXXX1725 at CHASE with account beneficiary as

17  EJOVI.

18      74.    This application seeks ONLY information that is relevant to the South African

---

[6]

https://www.google.com/search?rlz=1C1CHBF_enUS840US840&ei=o0ncXPjxELHl_Qb9mIGgDA&q=huntington+national+bank+cleveland+ohio+44114&oq=huntington+national+bank+cleveland+ohio+44114&gs_l=psy-ab.3..33i299l2.22312.24896..26517...0.0..0.152.687.2j4......0....1..gws-wiz.......0i71j0i22i30j33i22i29i30j33i160.pjfHyZVO4Bk

[7]      https://www.yellowpages.com/parma-heights-oh/jpmorgan-chase-bank-locations.

---

Police Services – SAPS Sinoville Case # 347/01/2019 and states as to each witness that:

    a.    HUNTINGTON and CHASE should have information related to the transfers referred to above in ¶ 21, that would show (i) what due diligence and Know Your Client (KYC) information the bank received from its account holder to support the transfers of monies; (ii) what invoices were presented to the bank by the account holder showing the reason the monies were being transferred into its account; and (iii) where monies, if any, were transferred onward out of the original accounts; and

    b.    EJOVI and GORY should have information related to the transfers referred to above in ¶ 21, including but not limited to (i) instructions and who gave them about why EJOVI and GORY were to receive the wire transfers; and (ii) where and to whom monies were to be transferred onward after they were received in the accounts at HUNTINGTON and CHASE.

75.    The evidence to be produced and the testimony that will be elicited is for use in the Nigerian fraud investigations being conducted by South African Police Services – SAPS Sinoville Case # 347/01/2019 – in which Applicant is a party. It may also be used in the FBI Field Office in New Orleans and the RCMP's investigation in which Applicant has an interest.

76.    Application is not seeking to circumvent evidence gathering laws or procedures in South Africa as the witness banks and witness account holders cannot be compelled by the South African investigating authorities to produce the evidence sought. And, in that regard, the South African authorities have confirmed that they welcome the evidence that Applicant is attempting to gather in the US Courts and that evidence will be used in their investigation and future prosecutions. **See Exhibit 1** - March 1, 2019 Email from Capt. Chiloane.

1      77.     This Application also does not seek to circumvent evidence gathering laws or

2  procedures in the United States or Canada both of which regularly accept evidence gathered

3  pursuant to 28 USC § 1782.

4      78.     This application is the only way to obtain the evidence from the witness banks

5  and witness account holders needed to present to the South African authorities and investigators

6  who are attempting to shut down this internet fraud and scheme and to hold accountable those

7  persons / entities within their jurisdiction for their wrongful acts against innocent persons.

8      79.     Granting of the relief sought presents no hardship or burden to the (i)

9  HUNTINGTON with GORY as the beneficiary or account holder related to the January 3, 2018

10  transfer of $15,000.00 to Account # XXXXXXX9922 and (ii) CHASE with EJOVI as the

11  beneficiary or account holder related to the February 9, 2017 transfer of $35,000.00, February

12  10, 2017 transfer of $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account #

13  XXXXXX1725, because the evidence is in their possession in this district and to the extent any

14  of the evidence is electronically stored, it can / should easily be produced from (i)

15  HUNTINGTON with GORY as the beneficiary or account holder and (ii) CHASE with EJOVI

16  as the beneficiary or account holder, servers, computer stored files and databases in this district.

17      80.     Granting this application is consistent with the principles of 28 U.S.C. § 1782 and

18  Fed R. Civ. P Rule 26. [8]

---

[8]    28 U.S.C. § 1782 provides that testimony shall be taken and documents / things produced in accordance with the Federal Rules of Civil Procedure). Fed. R. Civ. P. 26(d) provides that a district court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at \*2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL 3419189 (N.D. Cal. 2010)* (applicant should be given opportunity through discovery to identify unknown persons/entities) *(citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002)* and *Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)* (factors to be considered when

1

2

3

4    **WITNESSES NOT PARTIES TO FOREIGN PROCEEDING / INVESTIGATION**

5

6         81.     Witnesses (i) HUNTINGTON and GORY and (ii) CHASE and EJOVI are not

7    parties, nor are they in privy, with any other party in South African Police Services – SAPS

8    Sinoville Case # 347/01/2019.

9    **THE APPLICATION IS CONSISTENT WITH SUPREME COURT PRINCIPLES**

10

11         82.     The application is consistent with the principles and standards set forth in *Intel*

12   *Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); Consorcio Ecuatoriano de*

13   *Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., No. 11-12879, 2012 WL 2369166*

14   *(11th Cir. June 25, 2012); see In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007); United*

15   *Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001); Kulzer v. Esschem. Inc., 390*

16   *Fed. Appx. 88, 91 (3d Cir. 2010);* The Ninth Circuit has held that applications for subpoenas

17   pursuant to § 1782 may be filed *ex parte* because "[t]he witnesses can . . . raise objections and

18   exercise their due process rights by motions to quash the subpoenas." *In re Letters Rogatory*

19   *from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).*

20         83.     Further, as reflected by the language of § 1782, its purpose is to provide federal

21   court assistance in gathering evidence for use in a foreign tribunal. *See Intel Corp. v. Advanced*

22   *Micro Devices, Inc., 542 U.S. 241, 247 (2004); and Schmitz v. Bernstein Liebhard & Lifshitz,*

23   *LLP, 376 F.3d 79, 84 (2d Cir. 2004)* (§ 1782 has "twin aims," i.e., "providing efficient means of

---

establishing good cause to learn the identity of an unknown entity through early discovery).

1  assistance to participants in international litigation in our federal courts and encouraging foreign

2  countries by example to provide similar means of assistance to our courts") (internal quotation

3  marks omitted).

4

5  **EVIDENCE SOUGHT IS SPECIFIC & RELEVANT TO SOUTH AFRICAN**
6  **POLICE SERVICES – SAPS SINOVILLE CASE # 347/01/2019**
7

8      84.     This Petition seeks only specific information, also explained above that is relevant

9  to the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation and

10  future prosecutions and to show how the transfers referred to above in ¶ 21, specifically (i) the

11  January 3, 2018 transfer of $15,000.00 to Account # XXXXXXX9922 at HUNTINGTON with

12  GORY as beneficiary or account holder and (ii) the February 9, 2017 transfer of $35,000.00,

13  February 10, 2017 transfer of $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account #

14  XXXXXX1725 at CHASE with EJOVI as the beneficiary or account holder, were part of the

15  overall fraud that was run in part with the help of the South African domains through / from

16  which false and fake documents were sent to Applicant, his predecessors and partners and

17  specifically:

18      a.      the evidence from HUNTINGTON and CHASE will show (i) what due diligence

19  and Know Your Client (KYC) information which had to be given to (i) HUNTINGTON with

20  GORY as the beneficiary or account holder and (ii) CHASE with EJOVI as the beneficiary or

21  account holder HUNTINGTON by the person / entity that was responsible for directing that

22  Applicant's partners and predecessors make the transfers referred to above in ¶ 21; and

23      b.      EJOVI and GORY should have information related their accounts at

24  HUNTINGTON and CHASE, respectively, to support the transfers referred to above in ¶ 21

1  including but not limited to (i) instructions and who gave them about why the wire transfers were

2  sent; and (ii) where and to whom monies were to be transferred onward.

3    85.    This evidence will assist in South African Police Services – SAPS Sinoville Case

4  # 347/01/2019 investigation and future prosecutions against the person who ran the fake domain

5  in South Africa from which documents and instructions were sent to Applicant, his predecessors

6  and partners, to ensure that the fraud was shut down and with which the South African Police

7  Services – SAPS Case # 347/01/2019 investigators and prosecutors can connect the transfers

8  referred to above in ¶ 21 and which will show the persons and entities who organized, were

9  behind and who benefitted from fraudulent scheme against Applicant, his predecessors and

10  partners were brought to justice.

11    86.    This application seeks ONLY information directly related to how it came to be

12  that the transfers referred to above in ¶ 21, (i) were made to HUNTINGTON with GORY as the

13  beneficiary or account holder; (ii) were made to CHASE with EJOVI as the beneficiary or

14  account holder; (ii) how it came to be that the monies which Applicant, his predecessors and

15  partners were told were being sent to HUNTINGTON with GORY as the beneficiary or account

16  holder and CHASE with EJOVI as the beneficiary or account holder were to secure the

17  repatriation of the Inheritance Monies and Assets, instead came to be used for other purposes;

18  and (iii) where and to whom monies, if any, may have been out or were sent to persons / entities

19  who was part of or benefited from the fraud against Applicant his partners and predecessors.

20    87.    The requested information as limited to the transfers referred to above in ¶ 21,

21  specifically (i) the transfer to HUNTINGTON with GORY as the beneficiary or account holder

22  and (ii) the transfers to CHASE with EJOVI as the beneficiary or account holder will help in the

1   criminal investigation presently being conducted by the South African Police Services – SAPS

2   Sinoville Case # 347/01/2019.  This information will also help the investigations being

3   conducted by the FBI Field Office in New Orleans and the RCMP in Canada.

4        88.     The evidence to be produced and the testimony that will be elicited is for use in

5   the foreign investigation and future prosecutions related to this Nigerian fraud that are being

6   conducted by and part of the South African Police Services – SAPS Sinoville Case #

7   347/01/2019 in which Applicant is a party. [9]

8    **PETITION IS MADE IN COMPLIANCE WITH 28 USC § 1782 REQUIREMENTS,**
9    **CIRCUIT PRECEDENT & SHOULD BE GRANTED**

11    **The Requirements of Section 1782 and Subpoenas Have Been Met**

13       89.     28 U.S.C. § 1782(a), which provides: *The district court of the district in which a*

14  *person resides or is found may order him to give his testimony or statement or to produce a*

15  *document or other thing for use in a proceeding in a foreign or international tribunal, including*

16  *criminal investigations conducted before formal accusation.*  *The order may be made pursuant*

17  *to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the*

18  *application of any interested person and may direct that testimony or statement be given, or the*

19  *document or other thing be produced, before a person appointed by the court. By virtue of his*

20  *appointment, the person appointed has power to administer any necessary oath and take the*

21  *testimony or statement. The order may prescribe the practice and procedure, which may be in*

22  *whole or part the practice and procedure of the foreign country or the international tribunal, for*

23  *taking the testimony or statement or producing the document or other thing. To the extent that*

---

[9]    To the extent that the evidence has not already been provided to the FBI and the RCMP by Santa Clara Sheriff's Det. Cogliandro for use in their investigations and future prosecutions, it will be provided to them by Applicant.

1    *the order does not prescribe otherwise, the testimony or statement shall be taken, and the*

2    *document or other thing produced, in accordance with the Federal Rules of Civil Procedure.*

3        90.    Since 1948, "Congress [has] substantially broadened the scope of assistance

4    federal courts could provide for foreign proceedings," per § 1782. *Intel, 542 U.S. at 247-48.*

5        91.    The use of *ex parte* applications is widespread and, in many cases, unremarked

6    upon (and thus approved of *sub silentio*). *See, e.g., In re Request from UK Pursuant to Treaty*

7    *Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters in the Matter of*

8    *Dolours Price*, 685 F.3d 1, 6 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1796 (2013); *Brandi-Dohrn*

9    *v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d Cir. 2012); *In re Consorcio Ecuatoriano*

10   *de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 992 (11th Cir.

11   2012); *In re Clerici*, 481 F.3d 1324, 1329 (11th Cir. 2007).

12       92.    "The history of § 1782 reveals Congress' wish to strengthen the power of district

13   courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To, 858 F.2d 1564,*

14   *1565 (11th Cir. 1988).*

15       93.    Congress has granted the district courts broad discretion in granting judicial

16   assistance under § 1782. *In re Application of Consorcio Ecuatoriano de Telecommunicaciones*

17   *S.A., 2012 WL 2369166, at \*21 (11th Cir. 2012); In re Clerici, 481 F.3d 1324, 1331 (11th Cir.*

18   *2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001).*

19       94.    The district court has authority to grant § 1782 application for judicial assistance

20   if the following statutory requirements are met: (1) request must be made "by a foreign or

21   international tribunal," or by "any interested person"; (2) request must seek evidence, whether it

22   be the "testimony or statement" of a person or the production of "a document or other thing"; (3)

1    evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4)

2    person/entity from whom/which discovery is sought must reside and be found in the district of

3    the district court ruling on the application for assistance. 28 U.S.C. § 1782(a); *In re Clerici, 481*

4    *F.3d at 1332, and In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at *15.*

5       95.     Once the statutory requirements have been satisfied, the district court should

6    consider the following factors in deciding whether to exercise the discretion granted under §

7    1782: (1) whether "the person from whom discovery sought is a participant in the foreign

8    proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is

9    when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the

10    character of the proceedings underway abroad, and the receptivity of the foreign government or

11    the court or agency abroad to U.S. federal court judicial assistance"; (3) "whether the § 1782(a)

12    request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

13    a foreign country or the United States"; and (4) whether the request is otherwise "unduly

14    intrusive or burdensome." *In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-65).*

15       96.     The Supreme Court has held that § 1782 does not contain a "foreign-

16    discoverability requirement" – i.e., there is no requirement that the information sought be

17    discoverable under the law governing the foreign proceeding. Intel, 542 U.S. at 253. The Court

18    has further held that there is no requirement that a § 1782 applicant show "United States law

19    would allow discovery in domestic litigation analogous to the foreign proceeding." Id. at 263.

20       97.     Section 1782(a) further "directs judges to provide discovery assistance pursuant to

21    the Federal Rules of Civil Procedure," *Weber v. Finker, 554 F.3d 1379, 1383 (11th Cir. 2009)*, so

22    long as the order does not prescribe the practice and procedure of the foreign country or the

1    international tribunal.

2    98.    Section 1782 (a) can also be used to discover the identity of individuals behind

3    emails, domains and internet activity – which was how Applicant, his predecessors and partners

4    were instructed to make the transfers referred to above in ¶ 21, specifically (i) the wire transfers

5    to HUNTINGTON with GORY as the beneficiary or account holder and (ii) the wire transfers to

6    CHASE with EJOVI as the beneficiary or account holder - so that information can be provided to

7    foreign courts and investigating authorities.  *See In re Application for Appointment of a*

8    *Commissioner re Request for Judicial Assistance for the Issuance of Subpoena Pursuant to 28*

9    *U.S.C. § 1782, No. C 11-80136 RS (MEJ), 2011 WL 2747302 (N.D. Cal. July 13, 2011).*

10    **Applicant Has Met the § 1782(a) Statutory Requirements**

11    99.    The complaints pending and ongoing investigations by the South African Police

12    Services in SAPS Sinoville Case # 347/01/2019 is a foreign proceeding. *See 28 U.S.C. § 1782(a)*

13    *and In re Letters of Request to Examine Witnesses, 59 F.R.D. 625, 629 (N.D. Cal. 1973)*

14    ("crucial requirement is that the foreign body exercise adjudicative power and have an

15    adjudicative purpose").

16    100.    Applicant is the complainant and a party to the foreign proceeding. *See 28 U.S.C.*

17    *§ 1782(a) and Intel, 542 U.S. at 256* (stating that an interested person under § 1782 "plainly

18    reaches beyond the universe of persons designated 'litigant,'" although there is "[n]o doubt [that]

19    litigants are included among and may be the most common example").

20    101.    Applicant seeks only limited evidence in the form of witness testimony and

21    production of documents relevant to the transfers referred to above in ¶ 21, specifically (i) the

22    transfers to HUNTINGTON with GORY as the beneficiary or account holder and (ii) the

-----------------------------------------------------------------------------------------------------------------------
In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from (i)
Huntington Bank and David Gory and (ii) Chase and Johnbull Ejovi for use in a Foreign Tribunal and Proceeding - - *Page 24*

1    transfers to CHASE with EJOVI as the beneficiary or account holder as described above.

2        102.   As to HUNTINGTON and GORY, the discovery request is tailored to specific

3    transfers referred to above in ¶ 21, specifically (i) the January 3, 2018 transfer of $15,000.00 to

4    Account # XXXXXXX9922 at HUNTINGTON with account beneficiary as GORY and (ii) the

5    February 9, 2017 transfer of $35,000.00, February 10, 2017 transfer of $37,000.00 and March 2,

6    2017 transfer of $15,000.00 to Account # XXXXXX1725 at CHASE with account beneficiary as

7    EJOVI.

8        103.   As to CHASE and EJOVI, the discovery request is tailored to the transfers

9    referred to above in ¶ 21, specifically (i) the January 3, 2018 transfer of $15,000.00 to Account #

10   XXXXXXX9922 at HUNTINGTON with account beneficiary as GORY and (ii) the February 9,

11   2017 transfer of $35,000.00, February 10, 2017 transfer of $37,000.00 and March 2, 2017

12   transfer of $15,000.00 to Account # XXXXXX1725 at CHASE with account beneficiary as

13   EJOVI.

14       104.   The discovery request is also tailored to the transfers referred to above in ¶ 21,

15   specifically (i) the January 3, 2018 transfer of $15,000.00 to Account # XXXXXXX9922 at

16   HUNTINGTON with account beneficiary as GORY and (ii) the February 9, 2017 transfer of

17   $35,000.00, February 10, 2017 transfer of $37,000.00 and March 2, 2017 transfer of $15,000.00

18   to Account # XXXXXX1725 at CHASE with account beneficiary as EJOVI, including but not

19   limited to (i) instructions and who gave the instructions that the monies were to be wired into the

20   above accounts and (ii) why it was that monies were being wired paid by a third party – to wit:

21   Applicant, his predecessors and partners.

22       105.   The evidence to be produced and the testimony that will be elicited is for use in

1    the South African foreign proceeding South African Police Services – SAPS Sinoville Case #

2    347/01/2019 in which Applicant is a party.

3         106.    The evidence to be produced will assist the South African Police Services – SAPS

4    Sinoville Case # 347/01/2019 investigators understand how the above transfers referred to in ¶

5    21 and the fake emails and fake domains and fake documents were part and parcel of the entire

6    fraud, so that the South African authorities could take the necessary actions to stop this ongoing

7    fraudulent scheme and prosecute the persons involved and who / which benefited from this

8    Nigerian Fraud and scheme.

9         107.    The discovery and evidence sought is from (i) HUNTINGTON and its account

10   holder GORY and (ii) CHASE and its account holder EJOVI, each of which are located and can

11   be found in the district of the district court ruling on the application for assistance. *See 28 U.S.C.*

12   *§ 1782(a).*

13       **Discretionary Factors Favor Granting Applicant's § 1782 Application**

14       **Witnesses are Outside Jurisdictional Reach of South African Authorities**

15        108.    HUNTINGTON and its account holder GORY, and CHASE and its account

16   holder EJOVI are not the subjects of the criminal investigations pending in South Africa Police

17   Services – SAPS Sinoville Case # 347/01/2019.[10]

18        109.    The Supreme Court held that since "nonparticipants in the foreign proceeding

19   may be outside the foreign tribunal's jurisdictional reach ..., their evidence, available in the

20   United States, may be unobtainable absent § 1782(a) aid." *Intel, 542 U.S. at 264.*

21        110.    A foreign tribunal has jurisdiction over those appearing before it and can itself

---

[10]    Applicant is also informed that HUNTINGTON and ZHEJIANG are also not the targets of the FBI or the RCMP investigations.

1  order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be

2  outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United

3  States, may be unobtainable absent § 1782(a) aid. *Id. at 264.*

4      111.    As such, the relevant evidence, documents and information in (i)

5  HUNTINGTON's and its account holder GORY's and (ii) CHASE's and its account holder

6  EJOVI' possession, custody and control are not in the possession of the foreign tribunal and

7  would be accessible without judicial assistance in this jurisdiction. *See In re Chevron Corp.,*

8  *2010 U.S. Dist. LEXIS 47034, at \*20* (noting that Ecuadorian court and tribunal lacked

9  jurisdiction to compel the individual, who was located in the district and not a party to the

10  foreign proceedings, to produce the material sought) and *In re Microsoft Corp., 428 F. Supp. 2d*

11  *188, 194 (S.D.N.Y. 2006) (finding section 1782 assistance unnecessary and improper where the*

12  *discovery requested was already in the foreign tribunal's possession).*

13  **Nature and Receptivity of South African Authorities & Tribunals**

14      112.    Section 1782 (a) specifically provides "*The district court of the district in which a*

15  *person resides or is found may order him to give his testimony or statement or to produce a*

16  *document or other thing for use in a proceeding in a foreign or international tribunal, <u>including</u>*

17  *<u>criminal investigations conducted before formal accusation . . . .</u>* "

18      113.    § 1782 also authorizes and encourages judicial assistance even as to foreign

19  proceedings that have not yet commenced or advanced.  See *In re: Clerici at 1333 n. 12 (citing*

20  *Intel, 542 U.S. at 248-49).*

21      114.    § 1782(a) contains no threshold requirement that evidence sought from a federal

22  district court would be discoverable under the law governing the foreign proceeding. See *Intel,*

1 | *543 U.S. at 247; see also In re Clerici, 481 F.3d at 1333 n.12.*

2 | 115.    Applicants need not meet a foreign discovery requirement prior to being entitled

3 | to assistance under § 1782. *See In re Application of Winning, 2010 WL 1796579 at \*10, n.7.*

4 | 116.    However, to the extent the Court wishes to enquire about this, the March 1, 2019

5 | email from South African Police Services Capt. Chiloane confirms that whatever evidence he is

6 | able to secure from procedures in the United States will be welcomed in the investigation and

7 | future prosecution of SAPS Sinoville Case # 347/01/2019.  **See Exhibit 1.**

8 | **This Application is NOT a Fishing Expedition**

9 | 117.    Federal Courts must guard against the use of § 1782 Requests to investigate

10 | whether litigation is possible before launching a claim as well as attempts to collect evidence for

11 | the purpose of "developing" evidence for some future criminal or civil case. *See In re Sargeant,*

12 | *278 F. Supp. 3d 814 (SDNY 2917).*

13 | 118.    This Application is not a fishing expedition.  It is not being used to investigate

14 | whether a future claim can be made or to collect evidence for the purpose of developing / using it

15 | for some future criminal or civil case. *See In re: Sargeant, supra.*

16 | 119.    The evidence sought in this Application is for use in the South African Police

17 | Services – SAPS Sinoville Case # 347/01/2019 in which Applicant is the complaining witness

18 | and which evidence will allow the South African investigators and prosecutors to have the

19 | evidence to show the connection between that portion of the fraud run out of South Africa and (i)

20 | the transfers referred to above in ¶ 21, specifically (i) the January 3, 2018 transfer of $15,000.00

21 | to Account # XXXXXXX9922 at HUNTINGTON with account beneficiary as GORY and (ii)

22 | the February 9, 2017 transfer of $35,000.00, February 10, 2017 transfer of $37,000.00 and

1     March 2, 2017 transfer of $15,000.00 to Account # XXXXXX1725 at CHASE with account

2     beneficiary as EJOVI.  The evidence may also be used in the ongoing investigation by the FBI

3     New Orleans Field office and the RCMP investigation in which Applicant has an interest.

4         120.  The South African Police Services – SAPS Sinoville Case # 347/01/2019

5     investigation exists and are ongoing.  The FBI and RCMP investigations exist and are ongoing.

6     And, the Santa Clara County Sheriff's Department investigation that made the connection

7     between the broader Nigerian fraud against Applicant, his predecessors and partners to the part

8     of the fraud that tricked Applicant, his predecessors and partners to transfer monies to (i)

9     HUNTINGTON with GORY as the beneficiary or account holder and (ii) CHASE with EJOVI

10     as the beneficiary or account holder to pay for EJOVI's shipment of and transportation costs to

11     Nigeria.

12         121.  This § 1782 Application requests evidence that the law enforcement officials with

13     whom Applicant has been dealing have informed him the evidence as identified above must be in

14     the possession of (i) HUNTINGTON and its account holder GORY and (ii) CHASE and its

15     account holder EJOVI.

16                        **Applicant Is Not Attempting to Circumvent**
17          **South African Proof Gathering Restrictions and Policies**
18
19         122.  Applicant is not attempting to circumvent foreign proof-gathering mechanisms in

20     its efforts to secure this evidence but is attempting to gather evidence that is not otherwise

21     accessible to the foreign investigators and prosecutors and which  (i) will help in the

22     investigation and future prosecution of South African Police Services – SAPS Sinoville Case #

23     347/01/2019; (ii) will help identify the roles that each person/entities (presently known and as yet

24     to be discovered) played in behind the Nigerian fraud that was perpetrated against Applicant, his

1 predecessors and partners. Applicant does not have to prove receptivity to show they are not

2 attempting to circumvent foreign proof-gathering mechanisms. *See, e.g., In re Chevron, 762 F.*

3 *Supp. 2d 242, 252 (D. Mass. 2010).*

4  123. Applicants' request for judicial assistance in order to obtain the evidence from (i)

5 HUNTINGTON and its account holder GORY and (ii) CHASE and its account holder EJOVI

6 will help in the existing investigations and future prosecutions in South African Police Services –

7 SAPS Sinoville Case # 347/01/2019 and will help the investigators and prosecutors show how

8 the Nigerian fraud against Applicant, his predecessors and partners was perpetrated, that the

9 monies wired by Applicant's partners and predecessors was not used to secure the repatriation of

10 the alleged Inheritance Monies and Assets and the role played by each person/entity involved

11 with and benefitted from the fraud were inter-related and part of the entire fraud

12  124. Applicant, his predecessors and partners and Applicant is not attempting to

13 circumvent the foreign investigating authorities in South Africa's discovery methods and

14 restrictions. *See In re Application of Winning, 2010 WL 1796579 at \*10.*

15      **Application Not Unduly Burdensome or Intrusive**

16  125. The requests made by Applicant are narrowly tailored to documents, evidence and

17 information that are directly related to the transfers referred to above in ¶ 21, specifically (i) the

18 January 3, 2018 transfer of $15,000.00 to Account # XXXXXXX9922 at HUNTINGTON with

19 account beneficiary as GORY and (ii) the February 9, 2017 transfer of $35,000.00, February 10,

20 2017 transfer of $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account #

21 XXXXXX1725 at CHASE with account beneficiary as EJOVI and the documents, evidence and

22 information are / should be in the possession, custody and control of the (i) HUNTINGTON and

1   GORY and (ii) CHASE and EJOVI.   As such, the request is not overbroad nor burdensome. *See*

2   *In re Consorcio Ecuatoriano, 2012 WL 2369166, at \*20 n.7 and Intel, 542 U.S. at 265.*

3       126.    The evidence requested is "relevant to the foreign proceeding", to wit: the

4   criminal investigation by South African Police Services – SAPS Sinoville Case # 347/01/2019.

5   *See In re Dr. Braga, 789 F. Supp. 2d at 1304; compare In re Consorcio Ecuatoriano, 2012 WL*

6   *2369166 at \*24 (holding that the discovery is plainly relevant to the foreign proceedings where*

7   *they formed the basis for the defenses in those proceedings), Kang v. Noro- Moseley Partners,*

8   *246 Fed. App'x. 662, 664 (11th Cir. 2007) (denial only due to "irrelevance of requested*

9   *discovery to the nature of the foreign proceedings").*

10      127.    HUNTINGTON and GORY and CHASE and EJOVI are not participants in or

11  subject to the jurisdiction of the South African investigating authorities, it is uncertain that the

12  evidence, documents and information they possess can be accessed without the granting of this

13  request, as such are "outside the foreign tribunal's jurisdictional reach." *See Intel, 542 U.S. at*

14  *244.*

15      128.    The documents in HUNTINGTON's and GORY's and CHASE's and EJOVI'

16  possession, custody and control are relevant and have evidentiary value to the South African

17  Police Services – SAPS Sinoville Case # 347/01/2017 and providing the requested evidence does

18  not subject HUNTINGTON or EJOVI to undue burden. *See Fed. R. Civ. P. 45(c)(3)(iv), Int'l*

19  *Ass'n of Machinists and Aerospace Workers v. P&B Transp., 2007 WL 4145974, at \*2 (M.D.*

20  *Fla. 2007); Fadalla v. Life Automative Products, Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007)*

21  *(citing Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).*

22      129.    The discovery requests are limited to very specific activity in and through (i) the

transfers to HUNTINGTON with GORY as its account holder and (ii) the three transfers to CHASE with EJOVI as its account holder and as such they are sufficiently tailored so that they are directly relate to the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation and future prosecutions and will assist in the future investigation and prosecutions of persons / entities involved with and who/which benefitted from the Nigerian fraud against Applicant, his predecessors and partners. *See In re Consorcio Ecuatoriano, 2012 WL 2369166 at *25 (holding that discovery was appropriately tailored as it "limit[ed] the request to information" within a six year time period relating to one specific contract and the deposition of a person most knowledgeable), with Advanced Micro Devices, Inc. v. Intel Corp., 2004 U.S. Dist. LEXIS 21437 (on remand from the Supreme Court, the district court found the 1782 application to be "unduly intrusive and burdensome [since there was] . . . no attempt to tailor its application to the subject matter of the EC Complaint").*

## Applicant's Requests Satisfies Fed. R. Civ. P. Rules 26 & 45 Requirements

## FRCP Rule 26

130.    Discovery under § 1782 is guided by the applicable standards found in the Federal Rules of Civil Procedure. *See 28 U.S.C. § 1782* (providing that, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure).

131.    A court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts in this district generally consider whether a plaintiff has shown "good cause" for the early discovery. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL*

1    *3419189 (N.D. Cal. 2010); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-*

2    *77 (N.D. Cal. 2002).*

3    132.    To the extent that some of the evidence to be provided by HUNTINGTON and

4    GORY and CHASE and EJOVI identifies a person/ entity whose involvement in the fraud

5    against Applicant, his predecessors and partners is not currently known, Applicant should be

6    given an opportunity through discovery to identify these unknown persons/entities, unless it is

7    clear that discovery would not uncover the identities, or no valid claim could be made against

8    them. *See Solarbridge, 2010 WL 3419189, at *1 and Gillespie v. Civiletti, 629 F.2d 637 (9th Cir.*

9    *1980)).*

10    133.    The evidence for which § 1782 Relief is sought by Applicant is in the possession,

11    custody and control of HUNTINGTON and GORY and CHASE and EJOVI is limited to

12    evidence, documents and information related to the transfers referred to above in ¶ 21 that will

13    assist in the ongoing investigations and future prosecutions of the persons and entities behind the

14    internet fraud against Applicant, his predecessors and partners and will assist the foreign

15    investigating authorities show the interaction between the broader internet fraud being run in part

16    out of South Africa and the portion of the fraud that tricked Applicant, his predecessors and

17    partners to make the transfers referred to above in ¶ 21, specifically (i) the January 3, 2018

18    transfer of $15,000.00 to Account # XXXXXXX9922 at HUNTINGTON with account

19    beneficiary as GORY and (ii) the February 9, 2017 transfer of $35,000.00, February 10, 2017

20    transfer of $37,000.00 and March 2, 2017 transfer of $15,000.00 to Account # XXXXXX1725 at

21    CHASE with account beneficiary as EJOVI, were NOT used to help secure the repatriation of

22    the Inheritance Monies and Assets as Applicant, his predecessors and partners were lead to

1  believe but were to pay for the shipment of goods to or the payment of other costs related to

2  Nigeria.).  As such, the request does not violate the requirements of Fed. R. Civ. P. Rule 26.

### FRCP Rule 45

4  134.  Under FRCP Rule 45(a)(1)(C) a subpoena may command a nonparty served to

5  produce documents that are in its "possession, custody, or control."

6  135.  "Control is defined not only as possession, but as the legal right to obtain the

7  documents requested upon demand." *Searock v. Stripling, 736 F.2d 650, 653 (2d Cir.*

8  *1984).*  "Control" may also be found where an entity has "access to" and the "ability to obtain

9  the documents." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 144*

10  *(S.D.N.Y. 1997); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Austria, 2006*

11  *WL 1328259, \*5 (S.D.N.Y. 2006) (same); Addamax Corp. v. Open Software Found., Inc., 148*

12  *F.R.D. 462, 467 (D. Mass. 1993).*

13  136.  "Access" and "ability to obtain documents" is found where "documents ordinarily

14  flow freely between" persons or entities. *Hunter Douglas, Inc. v. Comfortex Corp., No. CIV. A.*

15  *M8-85, 1999 WL 14007, at \*3 (S.D.N.Y. Jan. 11, 1999).*

16  137.  The evidence needed by Applicant is or should be in the possession, custody and

17  control of HUNTINGTON and GORY and CHASE and EJOVI.  To the extent there are any

18  documents that may technically be in the control of another over whom / which HUNTINGTON

19  and GORY and CHASE and EJOVI have control, those documents are also within the

20  possession, custody and control of HUNTINGTON and GORY and CHASE and EJOVI.  The

21  evidence in HUNTINGTON and GORY and CHASE and EJOVI' possession, custody and

22  control is needed to assist in the ongoing criminal investigations and future prosecutions of and

to understand the roles played by each persons and entities who / which are part of and which benefitted from the Nigerian fraud against Applicant, his predecessors and partners.  *See In Re Imanagement Servs., 2005 U.S. Dist. LEXIS 17025, \*10 (E.D.N.Y. Aug. 16, 2005); and Fleischmann v. McDonald's Corp., 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006).*

## **CONCLUSION**

138.    **WHEREFORE,** in view of the foregoing, Applicant prays (i) for an Order (in the form attached) directing / permitting the issuance of subpoenas duces tecum (in the forms attached) to HUNTINGTON and GORY and CHASE and EJOVI to appear and testify and produce the limited categories of evidence, information, records and documents and (ii) for such other and further relief as is just and appropriate and consistent with 28 U.S.C. § 1782.

Respectfully submitted,

Dated: May  *16* , 2019

/s/ *Edward D. Fagan*
Edward D. Fagan, Pro Se
590 NE Wavecrest Way
Boca Raton, FL. 33432
Tel. (561) 757-5432
Email: faganinternational@gmail.com
Applicant Pro Se